IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN DOE,

    Plaintiff,

    v.

                         :      Case No. 3:16-cv-469

WRIGHT STATE UNIVERSITY, *et al.*,      JUDGE WALTER H. RICE

    Defendants.

---

DECISION AND ENTRY SUSTAINING MOTION TO DISMISS OF DEFENDANTS WRIGHT STATE UNIVERSITY, SARAH TWILL, MATTHEW BOAZ AND CHRIS TAYLOR (DOC #12) AND OVERRULING AS MOOT MOTION FOR LEAVE TO PROCEED ANONYMOUSLY OF PLAINTIFF JOHN DOE (DOC #2); PLAINTIFF JOHN DOE'S CLAIM ONE IS DISMISSED WITH PREJUDICE AS AGAINST ALL DEFENDANTS, AND DOE'S CLAIM TWO IS DISMISSED WITH PREJUDICE AS AGAINST TWILL, BOAZ AND TAYLOR IN THEIR INDIVIDUAL CAPACITIES, AND JUDGMENT SHALL ULTIMATELY ENTER IN FAVOR OF DEFENDANTS AND AGAINST DOE ON THOSE CLAIMS; DOE MAY FILE AN AMENDED COMPLAINT AS TO CLAIM TWO, AGAINST TWILL, BOAZ AND TAYLOR IN THEIR OFFICIAL CAPACITIES WITHIN TWENTY-ONE DAYS OF THIS ENTRY, SUBJECT TO THE CONDITIONS SET FORTH HEREIN AND THE STRICTURES OF RULE 11; PLAINTIFF MAY FILE A RENEWED MOTION FOR LEAVE CONTEMPORANEOUSLY WITH AN AMENDED CLAIM TWO; IF DOE FAILS TO FILE A VIABLE AMENDED CLAIM TWO, THEN THE COURT WILL DISMISS CLAIM TWO WITH PREJUDICE IN ITS ENTIRETY AND ENTER JUDGMENT IN FAVOR OF DEFENDANTS AND AGAINST DOE ON ALL CLAIMS

---

Plaintiff John Doe ("Doe"), a former member of the Wright State University ("WSU") Men's Varsity Tennis Team ("Team"), alleges that WSU and Sarah Twill ("Twill"), Chair of WSU's Student Appeals Panel, Matthew Boaz ("Boaz"), Director of WSU's Office of Equity and Inclusion, and Chris Taylor ("Taylor"), the Director of WSU's

Office of Community Standards and Student Conduct (collectively "Defendants")[1], in their respective individual and official capacities, improperly removed them from the Team and terminated their enrollment at WSU. Doe claims that Defendants violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution (claims brought under 42 U.S.C. §1983) and Article I, Section Sixteen of the Ohio Constitution. Doc. #1. Before the Court are Defendants' Motion to Dismiss, Doc. #12, and Doe's Motion for Leave to Proceed Anonymously as John Doe ("Motion for Leave"). Doc. #2. For the reasons set forth below, Defendants' Motion to Dismiss is SUSTAINED and Plaintiff's Motion for Leave is OVERRULED AS MOOT.

## I.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Doe was a Team member who received a full scholarship from WSU. Doc. #1, ¶ 3(a-b), PAGEID #2. In January 2016, Doe was informed that fellow Team members G.E. and T.S. had accused Doe and other Team members of digitally penetrating their anuses, *id.*, ¶ 34(a-b), PAGEID #19, and "alleged that John Doe used homophobic and racist language." *Id.*, ¶ 35. On or about January 21, 2016, and again on January 29, 2016, Doe met with Dr. Gary Dickstein, WSU's Assistant Vice President of Student Affairs and Deputy Title IX Coordinator, to discuss the allegations made by G.E. and T.S. *Id.*, ¶¶ 36-37. Dickstein and Boaz further investigated the complainants' allegations, *id.*, ¶ 38, PAGEID #20, and on or about February 2, 2016, Doe was notified that he had been formally accused of the following violations of WSU Student Code of

---

[1] When appropriate, Twill, Boaz and Taylor are referred to collectively as "Individual Defendants."

[2] As Defendants' Motion to Dismiss is brought, in part, under Rule 12(b)(6), the Court, for the purposes of the motion, must treat Doe's well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Conduct ("Code"): "bias; deliberate touching of another's sexual parts without consent; verbal harassment; and hazing." *Id.*, ¶ 39.

Prior to the hearings, Dickstein and Boaz prepared and submitted an investigative report and witness statements from several of Doe's teammates to the Gender-Based Harassment and Violence Panel ("GBHVP"), but Doe was not permitted to review those materials. Doc. #1, ¶ 55, PAGEID #23. Doe "subsequently learned that Dickstein[] and Boaz misrepresented, took out of context and embellished the statements of A.B., F.N., M.S., and A.M." in their reports to the GBHVP. *Id.*, ¶ 55(a). Further, despite Doe and other Team members alleging that G.E. and T.S. had engaged in the same conduct that precipitated the hearings for Doe and others, they never faced possible discipline for that conduct. *Id.*, ¶ 40(a), PAGEID #20.

On or about February 10, 2016, the GBHVP conducted separate hearings for Doe and at least six other Team members regarding the alleged misconduct described above. Doc. #1, ¶ 41(a), PAGEID #20. Doe alleges that, through those hearings, WSU, using the GBHVP as a vehicle, "was determined to take any and all actions to protect the Complainants and find John Doe responsible." *Id.*, ¶55(h). PAGEID #25. For instance, Doe claims that while the complainants were present at all the hearings, there were certain witnesses that testified at the hearings of other Team members, but not that of Doe. "As a result, John Doe did not have an opportunity to question or cross-examine many of the witnesses." *Id.*, ¶ 41(b), PAGEID #20. Nor was Doe "allowed to be present or question the Complainants when they made impact statements to the [GBHVP]." *Id.*, ¶ 55(c)(iii), PAGEID #24. "Doe was denied access to all of the documents [and] audio recordings related to all other members of the tennis team

involved in this case." *Id.*, ¶ 55(d). Doe was also denied the chance to present character witnesses or "the effective assistance of an attorney or other advisor." *Id.*, ¶ 55(e-f).

"On February 16, 2016, John Doe was informed that he had been found responsible for all of the violations and was going to be expelled from WSU. This Notification letter was signed by Taylor[.]" Doc. #1, ¶ 42, PAGEID #20. The letter informed Doe of his right to appeal, which he did on February 19, 2016. *Id.*, ¶¶ 42-43, PAEGID #20-21. On March 9, 2016, Doe "submitted an Amended Statement of Reasons for Appeal[,] . . . rais[ing] a number of grounds for appeal, including that WSU failed to comply with the procedures in the Code[.]" *Id.*, ¶ 43, PAGEID #21. On March 16, 2016, the WSU Appeals Panel issued a "Unanimous Denial of Appeal and Finding of Appropriately Imposed Sanctions" to Doe. *Id.*, ¶ 44. Twill, as Chair of the Appeals Panel, signed the denial and informed Doe that he "had been immediately expelled from Wright State University." *Id.*, ¶ 44(a) (internal quotation marks omitted). Due to his expulsion, "Doe is not eligible for readmission [to WSU,] and a notation will be placed on his transcript indicating disciplinary expulsion." *Id.* "Twill referred John Doe to Taylor if he had any further questions." *Id.*, ¶ 44(b).

On November 4, 2016, Doe filed the instant Complaint. Doc. #1. In Claim One, raised against the Individual Defendants in their individual and official capacities[3], *id.*, ¶ 48, PAGEID #22, Doe sought a declaration that the Defendants, through their enforcement of the Code against Doe, violated his rights to Due Process under the United States and Ohio Constitutions. *Id.*, ¶ 58, PAGEID #25. In Claim Two, raised

---

[3] WSU is not a party to Claim One or Claim Two, having been named as a Defendant only in the now-dismissed Claims Three and Four.

against Twill, Boaz and Taylor in their individual and official capacities, Doe claims that Defendants "have acted under color of law in violating the Plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution[]." *Id.*, ¶ 62. Doe seeks money damages from Twill, Boaz and Taylor in their individual capacities for these alleged violations. *Id.*, ¶ 61, PAGEID #25. As to Doe's claims against the Individual Defendants in their official capacities, he claims to be "entitled to an Injunction from this Court prohibiting the imposition of, or reporting of, any disciplinary actions under the WSU Code of Student Conduct against the Plaintiff." *Id.*, ¶ 66, PAGEID 26. In Claims Three and Four, Plaintiffs alleged that, through its application of the Code and Doe's expulsion, WSU violated Title IX of the Education Amendments of 1972, *id.*, ¶¶ 68-82, PAGEID #26-28, and breached the contract between WSU and Doe that arose out of Doe accepting an athletic scholarship and enrolling at WSU, respectively. *Id.*, ¶¶ 83-90, PAGEID #29-32. Finally, in his Prayer for Relief, Doe seeks "a Permanent Injunction vacating any discipline against John Doe and prohibiting further disciplinary proceedings in a manner that violates the contract between the parties or John Doe's constitutional rights." *Id.*, PAGEID #32.

On January 13, 2017, Defendants filed their Motion to Dismiss, Doc. #12, and on January 27, 2017, Doe dismissed Claims Three and Four without prejudice, Doc. #15, leaving only his Due Process Claims One and Two to be adjudicated.


## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief."

The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Rule 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the plaintiff has failed to [adequately] state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Legal conclusions "must be supported by [well-pleaded] factual allegations . . . [that] plausibly give rise to an entitlement of relief." *Id.* at 679. "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

Rule 15(a)(2) directs courts to give leave to amend "when justice so requires." Thus, a plaintiff whose claims are dismissed under Rule 12(b)(6) is often granted leave to file an amended complaint. Nonetheless, a court need not grant leave to amend if doing so would be futile. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted).

### B.    Rule 12(b)(1) Standard

"The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (citing Fed. R. Civ. P. 12(b)(1). "[T]he party invoking federal jurisdiction has the burden to prove that [subject matter] jurisdiction [exists]." *Global Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015). If the Court determines that it lacks jurisdiction over certain claims, then it must dismiss those claims. *See Ammex, Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003) (quoting *Riggs v. Island Creek Coal Co.*,

542 F.2d 339, 343 (6th Cir. 1976)) ("parties cannot waive the requirement of subject matter jurisdiction.").

Defendants have raised a "facial attack on the subject matter jurisdiction alleged in the complaint[, which] merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under [Rule] 12(b)(6) motions to dismiss." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (emphasis removed).

### C. Eleventh Amendment and 42 U.S.C. § 1983 Claims

Section 1983 claims for money damages may only be brought against a "person," as that term is defined under 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 60, 109 S.Ct. 2312,105 L.Ed.2d 93 (1989). "[N]either a State nor its officials acting in their official capacities are persons under [section] 1983." *Id.* at 71. Moreover, "in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104, 104 S.Ct. 800, 79 L.Ed.2d 93 (1984). A university funded by the State of Ohio is considered "an arm of the state," and thus, entitled to immunity under the Eleventh Amendment. *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 304 (6th Cir. 1984). As WSU is a publicly-funded university, and Twill, Boaz and Taylor are administrators who were acting in their official capacities, they are not "persons" that may be sued for money damages under 42 U.S.C. § 1983. Thus, Doe's claims for money damages may only proceed against Twill, Boaz and Taylor in their individual capacities.

The Supreme Court has held that a narrow exception to Eleventh Amendment immunity exists for lawsuits against government officials in their official capacities if a plaintiff seeks only non-monetary damages. *Ex Parte Young*, 209 U.S. 123, 155-56, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The *Ex Parte Young* exception exists "to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105 (quoting *Ex Parte Young*, 209 U.S. at 160). Thus, the Individual Defendants may not be retrospectively sued in their official capacities for any violation of state law that WSU may have committed. *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005). Further, a plaintiff suing a defendant in his official capacity may only "seek prospective relief to end a continuing violation of federal law." *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2014).

## III.    ANALYSIS

### A.    Fifth Amendment

In Claims One and Two, Doe alleges that the Individual Defendants deprived him "of life, liberty, or property, without due process of law[,]" in violation of the Fifth Amendment to the United States Constitution. Doc. #1, ¶¶ 49, 56, 61-62, PAGEID #22, 25. Yet, it is well-established that the Fifth Amendment applies only to the United States government and its officials. *See, e.g., Dusenberry v. United States*, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (the "Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law."). Doe did not raise claims against any federal government

9

officials; nor does he allege that the Individual Defendants were acting on behalf of the United States government. Finally, the nature of Doe's allegations would make it impossible for an amended Fifth Amendment claim to survive a renewed motion to dismiss. Thus, to the extent Claims One and Two arise under the Fifth Amendment, they must be dismissed with prejudice.

### B.    Individual Capacity Claims

If a Due Process claim brought under the Fourteenth Amendment to the United States Constitution or under the Ohio Constitution[4] is to survive a motion to dismiss, "damages claims against government officials" in their individual capacities "must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted [C]onstitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis added). In the Proposed Amended Complaint, the only well-pleaded factual allegations raised against the Individual Defendants were that:

1. Twill chaired the University Appeals Panel, signed the Panel's unanimous rejection of Doe's appeal, and referred Doe to Taylor if he had any questions about the Panel's decision and Doe's expulsion from WSU;

2. Boaz conducted the pre-hearing investigation of T.S. and G.E.'s allegations against Doe and other Team members. From those investigations, Boaz prepared and submitted investigative reports and

---

[4] "[T]he analysis of 'due course of the law' claims made under the Ohio Constitution is the same as that of 'due process' claims under the United States Constitution[.]" *Doe v. The Ohio St. Univ.*, 136 F. Supp. 3d 854, 870 (S.D. Ohio 2016) (Graham, J.) (quoting *Groch v. Gen. Motors Corp.*, 117 Ohio St. 3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 53); *Nuesse v. Kline*, No. 3:09-cv-329, 2009 WL 1850319, at *6 (N.D. Ohio Jun. 26, 2009)).

witnesses statements to the GBHVP, the latter of which were misrepresented and embellished by Boaz; and

3. <u>Taylor</u> signed a letter informing Doe that the GBHVP had found him responsible for the Code violations and that he would be expelled from WSU. Taylor's letter also informed Doe of his right to appeal the GBHVP's decision.

Doc. #1, ¶¶ 5-7, 41(c), 42(a), 44(b), 55(a), PAGEID #2-4, 20-21, 23.

Doe has failed to raise a plausible Due Process claim against any of the Individual Defendants. Doe does not allege that the University Appeal's Panel's processes or decision upholding the GBHVP's decision violated the United States or Ohio Constitutions. He does not allege that Twill was involved in the initial notice of alleged misconduct that he was provided; nor does he allege that Twill was involved with the GBHVP hearing process or its finding that Doe was responsible for the alleged misconduct. Absent any allegation that Twill deprived him of meaningful notice and a meaningful opportunity to be heard, Doe's claims against her cannot be sustained.

Similarly, Doe does not allege that Boaz was involved with the notice provided to him; nor does he claim that Boaz was a GBHVP member or in any way involved with Doe's hearing or the GBHVP's decision. Rather, Doe's allegations against Boaz relate to alleged bias and misconduct during his investigation of Doe. Yet, it is well-settled that Constitutional due process is not implicated with respect to any pre-hearing investigation. *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 586-87 (6th Cir. 2013); *see also Doe v. The Ohio State Univ.*, No. 2:15-cv-2830, 2016 WL 6581843, at *8 (S.D. Ohio Nov. 7, 2016) (Graham, J.) ("Due process provides, not a guarantee of a perfect

investigation, but notice and an opportunity to be heard by a neutral decisionmaker.").

Thus, Doe has not set forth a viable Due Process claim against Boaz.

Finally, Doe's allegations do not permit the logical inference that Taylor engaged in any malfeasance against him, much less that Taylor undertook any act that violated his Due Process rights. Accordingly, Claims One and Two, to the extent that they are brought against Swill, Boaz and Taylor in their respective <u>individual</u> capacities, must be dismissed.[5]

### C.    Official Capacity Claims

#### 1.    Scope of Permissible Relief

Doe raises Claims One and Two against Swill, Boaz and Taylor in their official capacities, which is "in all respects[,] other than name, to be treated as a suit against the entity[,]" WSU. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Doe attempts to get past the above-described Eleventh Amendment bar by seeking only injunctive and declaratory relief. Doc. #1, ¶¶ 58, 66 PAGEID #25, 26. Plaintiff seeks declaratory relief only as to Claim One, claiming that he is entitled to a "declaration that the WSU Code of Conduct, as applied to John Doe, violates the Due Process Clauses of the United States Constitution and the Due Course of Law Clause of the Ohio Constitution." *Id.*, ¶ 56, PAGEID #25. As Doe is no longer enrolled at WSU, there can be no continuing or prospective application of the Code that would violate Doe's Constitutional rights. Further, and contrary to Doe's argument, any such

---

[5] As Doe has not shown that he has been deprived of a constitutional right, the Court need not evaluate the Individual Defendants' qualified immunity argument. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (the first step in a qualified immunity analysis is usually determining whether Plaintiffs have shown the deprivation of a constitutional right).

12

declaration would not be "ancillary to issuing an injunction prohibiting further enforcement of the disciplinary sanction against him." Doc. #14, PAGEID #200 (citing *Doe v. Cummins*, No. 16-3334, 662 F. App'x 437, 444 (6th Cir. 2016)). Rather, and as discussed in more detail below, Doe's prayer for injunctive relief concerns the listing of his disciplinary expulsion on his student record, and any prospective reporting . Doc. #1, ¶ 66, PAGEID #26. Yet, through the Code's processes, Doe could have been expelled for disciplinary reasons in a manner that did not violate the United States or Ohio Constitutions' guarantees of due process. Thus, his prayer for declaratory relief is not ancillary to his prayer for injunctive relief, and the former is barred by the Eleventh Amendment.

In Claim Two, Doe claims that he "is entitled to an Injunction from this Court prohibiting the imposition of, or reporting of, any disciplinary actions under the WSU Code of Student Conduct against [him]." Doc. #1, ¶ 66, PAGEID #26. Further, in his prayer for relief, he moves that this Court grant "a Permanent Injunction vacating any discipline against John Doe and prohibiting further disciplinary proceedings in a manner that violates . . . Doe's constitutional rights" *Id*., PAGEID #32. Plaintiff is no longer enrolled at WSU, and no discipline can be enforced by the Defendants against Doe; consequently, those portions of Claim Two and the prayer for relief seeking to prohibit Defendants from disciplining Doe are barred by the Eleventh Amendment. Further, Doe's request for an injunction vacating the discipline against him is retroactive in nature and, thus, also barred by the Eleventh Amendment. However, in the companion case of *Venegas v. Wright St. Univ.*, which addresses the expulsion of Team members accused of the same conduct as Doe, WSU and Taylor conceded that "the removal of

entries from a student record stemming from an allegedly unconstitutional process is prospective in nature and not barred by the Eleventh Amendment." No. 3:16-cv-377, Doc. #9, PAGEID #115 (citing *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995)). Thus, to the extent Doe is seeking to prevent WSU from reporting, through disclosures of his transcript and student record, that he was expelled for disciplinary reasons, such relief is constitutionally permissible—provided that he has set forth a plausible claim of due process violations.

## 2. Procedural Due Process Claim Two is not Viable

For Doe's procedural due process claim to be viable, he must plausibly allege that: (1) he had a fundamental liberty or property interest; and (2) he was deprived of said interest without sufficient notice or formal opportunity to be heard. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572-73, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (citations omitted); *see also Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (at the very least, a student facing deprivation of his liberty interest in pursuing an education "must be given some kind of notice and afforded some kind of hearing.").

> [I]n determining the amount of process due, courts are to look at three factors: (1) the nature of the private interest affected—that is, the seriousness of the charge and potential sanctions, (2) the danger of error and the benefit of additional or alternate procedures, and (3) the public or governmental burden were additional procedures mandated.

*Flaim*, 418 F.3d at 635 (citing *Ingraham v. Wright*, 430 U.S. 651, 676-82, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)).

Doe alleges that expulsion from WSU deprived him of the following liberty or property interest: "the benefits of education at his chosen school"; "damage [to] John

14

Doe's academic and professional reputation"; "ability to enroll at other institutions of higher education, receive a tennis scholarship, and to pursue a career; and "his tennis scholarship." Doc. #1, ¶ 54, PAGEID #23. As it is well-settled "that the Due Process Clause is implicated by higher education disciplinary decisions," *Flaim*, 418 F.3d at 633 (citations omitted), Doe has satisfied the first *Roth* prong.

Doe does not claim that he received inadequate notice of the allegations against him. Rather, he attempts to meet his burden on the second *Roth* prong by alleging that: (1) he was not allowed to confront or cross-examine several of the witnesses; (2) he was strongly discouraged from calling other Team members as witnesses; (3) the GBHVP was impermissibly biased against him; (4) he did not have a chance to hear or rebut G.E. and T.S.'s impact statements at the GBHVP hearing; (5) he and the GBHVP were not informed of accommodations given by WSU to G.E. and T.S., despite those accommodations potentially impacting the complainants' credibility vis-à-vis Doe. Doc. #14, PAGEID #205-12 (citing Doc. #1, ¶¶ 28, 41(a), 55(a-c, g-h), PAGEID #17, 20, 23-24, 25). Doe claims that the aforementioned allegations, taken together, constituted an unconstitutional deprivation of his protected interests. Doc. #1, ¶¶ 56, 64, PAGEID #25, 26.

Much of Doe's memorandum in opposition focuses on his inability to cross-examine witnesses. He claims that in cases where, as here, the outcome hinges on the factfinder's credibility determination, due process requires that he be given the right to cross-examine adverse witnesses. Doc. #14, PAGEID #206-08 (citing *Goldberg v. Kelly*, 397 U.S. 254, 269-70, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 641 (6th Cir. 2005); *Cummins*, 662 F. App'x at 448; *The Ohio St.*

*Univ.*, 219 F. Supp. 3d at 659-60). Doe claims that Defendants violated that right in two ways: (1) refusing to allow Doe to cross-examine witnesses who testified at the hearings of other Team members, but not at Doe's hearing; and (2) not permitting Doe to read "impact statements" that G.E. and T.S. submitted to the GBHVP prior to Doe's hearing, or cross-examine the complainants about same. *Id.*, PAGEID #209.

At the outset, the Court notes that, as a general rule, cross-examination is not required to satisfy due process in an expulsion proceeding. *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 925 (6th Cir. 1988); *see also Flaim*, 418 F.3d at 641 (unless the hearing's outcome depended upon the relative credibility of the accuser vis-à-vis the accused, due process is satisfied if an accused student had the opportunities to observe the testimony of adverse witnesses and to present his version of the events at issue.). Moreover, Doe does not allege that he was denied the opportunity to cross-examine either G.E. or T.S.; indeed, he concedes in his Complaint that he cross-examined at least one of the complainants as to whether he had engaged in behavior similar to that which Doe was accused of. Doc. #1, ¶ 55(c)(iv), PAGEID #24.

Further, Doe's allegations that he was unable to cross-examine witnesses from other hearings do not constitute a due process violation, for two reasons. First, he does not claim that the testimony of these witnesses was adverse to him. Second, and more importantly, he does not allege that the GBHVP considered the testimony of any of those witnesses in determining whether Doe was responsible for Code violations. Thus, any right Doe had to cross-examine adverse witnesses was never implicated with respect to the testimony of other Team members, and any failure by the Defendants to provide such an opportunity cannot constitute a due process violation. As there

appears to be no set of facts that could show that Doe was prejudiced by an inability to cross-examine, he shall not be granted further leave to amend to raise a due process claim on this theory.

Similarly, Doe's allegation that he "was strongly discouraged by the Chair of the Hearing Panel from calling other members of the Men's Tennis Team as witnesses[,]" *id.*, ¶ 55(c)(i), PAGEID #24, is insufficient to sustain a due process claim. While a student facing expulsion generally has the right to present evidence, "the right to call exculpatory witnesses" is not always necessary to satisfy due process. *Flaim*, 418 F.3d at 636 (citation omitted). Moreover, the Complaint does not describe the testimony that these fellow Team members would have given to buttress Doe's defense; nor does Doe allege how his inability to call witnesses prevented him from presenting evidence or otherwise fully defending against the allegations. However, subject to the strictures of Rule 11, Doe will be given one final chance to set forth facts that permit the plausible inference that: (a) he had the due process right to call exculpatory witnesses; and (b) he was prejudiced by not being allowed to do so.

Doe's fourth argument—that he was not permitted to view G.E. and T.S.'s impact statements, or cross-examine the complainants about those statements—likewise may not form the basis of a due process claim. In rejecting Doe's appeal, the University Appeals Panel concluded that G.E. and T.S.'s "impact statements were provided to the [GBHVP] the day of the hearing and were not able to be provided to [Doe] in advance. Furthermore, the impact statements [(as opposed to their testimony)] were not used to

determine if violations occurred." Doc. #12-1, PAGEID #183.[6] In neither his Complaint nor his memorandum *contra* does Doe call the Appeals Panel's statement into doubt; nor does Doe, in any filing with this Court, deny that he digitally penetrated G.E. and T.S. As the impact statements had no influence on Doe's hearing or the GBHVP's decision, any inability to cross-examine G.E. and T.S. about those statements did not violate due process. As the impact statements had no influence on the proceedings leading to Doe's expulsion, leave to amend shall not be granted as to his fourth argument.

Finally, Plaintiffs' allegation that "WSU was determined to take any and all actions to protect the Complainants and find John Doe responsible[,]" Doc. #1, ¶ 55(h), PAGEID #25, is conclusory and does not permit the reasonable inference that the GBHVP denied him a fair and impartial hearing. "In the university setting, a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of actual bias." *McMillan v. Hunt*, No. 91-3843, 968 F.2d 1215 (TABLE), 1992 WL 168827, at *2 (6th Cir. Jul. 21, 1992) (*per curiam*) (citing *Ikpeazu v. Univ. of Neb.*, 775 F.2d 250, 254 (8th Cir. 1985)). To overcome that presumption, Doe must plausibly allege "personal animosity, illegal prejudice, or a personal or financial stake in the outcome" on the part of the GBHVP or other WSU officials. *Ikpeazu*, 775 F.2d at 254; *accord*: *Cummins*, 2016 WL 7093996, at *11 (quoting *Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987) (To survive a motion to dismiss, allegations of bias must be "evident from the record and cannot be based on speculation or inference."). The only

---

[6] Doe references the University Appeals Panel's decision and letter in his Complaint, Doc. #1, ¶ 44, PAGEID #21, and Twill is being sued in her official capacity as the Panel's Chairperson. *Id.*, PAGEID #1. Thus, the Court may consider the Panel's decision and letter without converting Defendants' Motion to Dismiss to one for summary judgment. *Thomas*, 621 F. App'x at 828.

allegations Doe offers in support of his claim of bias were that "WSU ignored evidence that would undermine the credibility of the Complainants and dismissed charges against them for similar conduct[,]" Doc. #1, ¶ 55(h), PAGEID #25, and that "Doe was not permitted to question the Complainants about similar behavior in which they engaged." *Id.*, ¶ 55(c)(iv), PAGEID #24. Yet, Defendants correctly note that the issue of whether the Complainants engaged in any sexual misconduct is immaterial to the issue of whether <u>Doe</u> engaged in the same misconduct, Doc. #18, PAGEID #238-41 (citing *Carney v. The Univ. of Akron*, No. 5:15-cv-2309, 2016 WL 4036726, at *11 (N.D. Ohio Jul. 28, 2016)), and as discussed above, Doe does not deny that he digitally penetrated G.E. and T.S.

Moreover, Doe does not allege that the GBHVP considered G.E. and T.S.'s alleged sexual misconduct in determining whether other Team members were responsible for the same misconduct. Thus, he has not plausibly alleged that he was treated unfairly vis-à-vis other Team members who had hearings before the GBHVP due to personal animus or his membership in a protected class. In light of these failures, Doe's allegations of bias do not meet the *Ikpeazu* standard. However, subject to Rule 11, *Iqbal* and *Twombly*, Doe will be given one final opportunity to set forth plausible allegations that would satisfy *Ikepazu*.

In sum, Doe was given sufficient notice of the allegations against him by WSU officials, and the hearings before the GBHVP and University Appeals Panel provided meaningful opportunities to defend himself against those allegations. As pled, Doe has failed to set forth a viable Due Process claim, and Claim Two must be dismissed.

## IV. MOTION FOR LEAVE

As all of the claims in Doe's Complaint have been dismissed, Doe's Motion for Leave is overruled as moot. However, the Motion for Leave is subject to renewal if he chooses to file an amended complaint, and Doe's amended claim could survive a renewed motion to dismiss by Defendants.


## V. LIMITED LEAVE TO AMEND

As Doe is no longer enrolled at WSU, his claim for declaratory judgment is retrospective in nature; thus, it is barred by the Eleventh Amendment, and Claim One must be dismissed with prejudice. Further, an examination of the Complaint, the parties' briefing and the exhibits attached thereto leads the Court to conclude that the Individual Defendants undertook no conduct that violated Doe's clearly established Constitutional rights. Thus, Doe's individual capacity claims against the Individual Defendants must also be dismissed with prejudice as to both Claims One and Two. *See Pearson*, 555 U.S. at 236 (government official entitled to qualified immunity unless the Constitutional right that the official violated was clearly established at the time of violation). However, for the reasons discussed above, Plaintiffs shall be granted leave to amend as to the following subsections of Claim Two:

1. That Doe had a right to call exculpatory witnesses, and was prejudiced by being prevented from doing so; and

2. The hearing was tainted by animus, prejudice, or impermissible stake in the outcome on the part of WSU officials.

Any such claim may only be raised against Twill, Boaz and Taylor in their respective official capacities. Further, Plaintiffs may only seek the injunctive relief that is not otherwise barred by the Eleventh Amendment.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, Doc. #12, is SUSTAINED, and Doe's Motion for Leave Doc. #2, is OVERRULED AS MOOT. Claim One is DISMISSED WITH PREJUDICE against all Defendants, and Claim Two is DISMISSED WITH PREJUDICE as to Twill, Boaz and Taylor in their individual capacities. Judgment shall ultimately enter in favor of Defendants and against Doe as to those claims. Doe may file an amended Claim Two within twenty-one days of this entry, subject to the restrictions described above and to the requirements of *Iqbal*, *Twombly* and Rule 11. If Doe files an amended complaint, then he may also file a renewed Motion for Leave simultaneously. If Doe does not file an amended Claim Two, or if the amended claim does not survive a renewed motion to dismiss, then the Court will enter judgment in favor of Defendants and against Doe on all claims.

Dated: August 24, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE